UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

SANTIAGO ANZURES, *et al*.,                    :
                                               :
                        Plaintiffs,            :
                                               :
        -against-                              :            REPORT AND
                                               :            RECOMMENDATION
MAREDIN REST. CORP. d/b/a T-BONE DINER and     :
PETER PLEVRITIS, as an individual,             :            No. 22-CV-2798-EK-JRC
                                               :
                        Defendants.            :
--------------------------------------------------------------------x

JAMES R. CHO, United States Magistrate Judge:

　　　　Plaintiffs Santiago Anzures, Alfredo Sanchez Quirino and Eleazar Mendez Barranco

("plaintiffs") bring this wage and hour action against defendants Maredin Rest. Corp., an entity

doing business as T-Bone Diner ("T-Bone Diner" or "corporate defendant"), and Peter Plevritis

("Plevritis" or "individual defendant") (collectively, "defendants"), pursuant to the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and the New York Labor Law ("NYLL")

§ 650 *et seq*.  *See generally* Compl., Dkt. 1.  Upon plaintiffs' application and in light of

defendants' failure to appear in or otherwise defend this action, the Clerk of the Court entered

defendants' default on July 15, 2022.  *See* Dkt. 13.  Currently pending before this Court, on a

referral from the Honorable Eric R. Komitee, is plaintiffs' motion for default judgment against

defendants, seeking to hold them jointly and severally liable for unpaid minimum and overtime

wages, unpaid regular wages, spread of hours premiums, statutory penalties, and liquidated

damages.  *See* Order Referring Motion dated May 18, 2023; Motion for Default Judgment, Dkt.

23; Proposed Default J., Dkt. 24-9; *see generally* Mem. of Law in Supp. of Mot. for Default J.

("Pls.' Mem."), Dkt. 25.  For the reasons set forth below, this Court respectfully recommends

granting in part and denying in part plaintiffs' motion.

## I.    Background

The following facts, as drawn from plaintiffs' Complaint and their declarations, are accepted as true for purposes of this motion.  The corporate defendant, Maredin Restaurant Corporation, is a domestic corporation organized under the laws of the State of New York, operating as T-Bone Diner, with its principal place of business at 107-48 Queens Boulevard, Forest Hills, New York 11375.  *See* Compl. ¶ 10.  Defendant Peter Plevritis is the owner of T-Bone Diner.  *Id*. ¶ 11.  Plevritis had the power to hire and fire employees at T-Bone Diner, determine and approve rates and methods of pay, determine and approve employee work schedules, supervise and control the work of the employees, and create and maintain employment records.  *Id*. ¶¶ 13-18.  Defendants paid each plaintiff bi-weekly and in cash.  *See, e.g.,* Declaration of Santiago Anzures ("Anzures Decl.") ¶¶ 10-11, Dkt. 24-10; *see also* Compl. ¶¶ 27, 35, 47.  At all relevant times, the gross revenues of T-Bone Diner were in excess of $500,000 and defendants were enterprises engaged in commerce or in the production of goods for commerce.  Compl. ¶ 20.

### A.    Plaintiffs' Employment History

#### 1.    Santiago Anzures

In May 1986, Plevritis interviewed and hired Anzures to work at T-Bone Diner.  *See* Anzures Decl. ¶ 3.  Plevritis also set Anzures' work schedule each week.  *See id.* ¶ 6.

From 1986 until in or about February 2022, defendants employed plaintiff Anzures as a cook and baker.  *See* Compl. ¶ 22; Anzures Decl. ¶¶ 3-4.  As relevant to the instant motion, from May 2016 through December 2017, Anzures regularly worked Monday through Friday, from 6:00 a.m. to 4:00 p.m. (10 hours per day), and on Saturday, from 6:00 a.m. to 12:00 p.m. (6

hours per day), for a total of 56 hours per week.  Compl. ¶¶ 24-25; Anzures Decl. ¶ 7.

Throughout 2018, Anzures worked a reduced schedule of five days per week from 6:00 a.m. to

4:00 p.m., for a total of 50 hours per week.  Compl. ¶¶ 24-25; Anzures Decl. ¶ 7.  During 2019,

Anzures' schedule decreased further to five days per week, from 6:00 a.m. to 2:00 p.m., for a

total of 40 hours per week.  Compl. ¶¶ 24-25; Anzures Decl. ¶ 7.  For 2020, Anzures regularly

worked five days per week, from 6:00 a.m. to 12:00 p.m., for a total of 30 hours per week.

Compl. ¶¶ 24-25; Anzures Decl. ¶ 7.  From January 2021 through February 2022, Anzures

regularly worked three days per week, from 6:00 a.m. to 12:00 p.m., for a total of 18 hours per

week.  Compl. ¶¶ 24-25; Anzures Decl. ¶ 7.

Although defendants told Anzures that he would receive his pay on a weekly basis,

Plevritis paid Anzures bi-weekly, and always in cash.  Compl. ¶ 27; Anzures Decl. ¶¶ 10-11.

From May 2016 through December 2020, defendants paid Anzures a flat weekly rate for all

hours worked in the amount of $575.  Compl. ¶ 26; Anzures Decl. ¶ 9.  From January 2021 until

February 2022, defendants paid Anzures a flat weekly rate of $270.  *Id.*  Anzures alleges that he

was not paid an overtime premium for those hours he worked in excess of 40 per week, was not

paid the required minimum wage from January 2019 through February 2022, and was not

compensated at all for approximately ten weeks of his employment.  Compl.  ¶¶ 28-30; Anzures

Decl. ¶¶ 12, 14.  Defendants never provided Anzures with a paystub or wage statement.  *See*

Anzures Decl. ¶ 11.

### 2.     Alfredo Sanchez Quirino

In August 2008, Plevritis hired Quirino to work at T-Bone Diner as a dishwasher and

delivery worker, in which capacity Quirino continued to work until February 2022.  *See*

Declaration of Alfredo Sanchez Quirino ("Quirino Decl.") ¶¶ 3-4, Dkt. 24-11; Compl. ¶ 31.

Plevritis set Quirino's work schedule each week and paid him bi-weekly, in cash. *See* Quirino Decl. ¶¶ 6, 9, 12.

Throughout his employment, Quirino regularly worked six days per week, from 6:00 a.m. to 4:00 p.m., for a total of 60 hours per week. *See* Compl. ¶¶ 32-34; Quirino Decl. ¶ 7.

From May 2016 through February 2020, Quirino was paid a flat weekly rate of $640, bi-weekly, regardless of the number of hours that he worked that week.[1] Compl. ¶ 35; Quirino Decl. ¶¶ 9, 14. However, in March 2020, at the outset of the COVID-19 pandemic, defendants told Quirino that they would no longer pay him a salary and that he would receive only tips until "things went back to normal." Compl. ¶ 36; Quirino Decl. ¶ 10. Indeed, from March 2020 until his employment ended in February 2022, defendant failed to pay Quirino for his work. Compl. ¶¶ 38-39; Quirino Decl. ¶ 11.

Quirino alleges that he was not paid an overtime premium for those hours he worked in excess of 40 per week, was not paid the required minimum wage throughout his employment and was not compensated at all from March 2020 until February 2022. Compl. ¶¶ 38-41; Quirino Decl. ¶¶ 9-11, 14. In addition, defendants never provided Quirino with a paystub or wage statement. *See* Quirino Decl. ¶ 12.

### 3. Eleazar Mendez Barranco

In February 2012, Plevritis hired Barranco to work at T-Bone Diner as a dishwasher and delivery person. Compl. ¶ 43; Declaration of Eleazar Mendez Barranco ("Barranco Decl.") ¶ 3,

---

[1] In the Complaint and plaintiffs' declarations, it is unclear whether the amounts Quirino and Barranco allege they were paid refer to the full amount each plaintiff received, or a breakdown of their bi-weekly pay on a weekly basis. *See, e.g.*, Compl. ¶ 35 (Quirino "was paid by Defendants a flat rate of approximately $640.00 bi-weekly"); *id.* ¶ 47 (Barranco "was paid by Defendants a flat rate of approximately . . . $650.00 every bi-weekly period"); Quirino Decl. ¶ 9 ("Peter [Plevritis] would pay me approximately $640.00 bi-weekly"); Barranco Decl. ¶ 9 ("Peter [Plevritis] would pay me approximately $650.00 every bi-weekly period"). However, in counsel's memorandum and calculation of damages, plaintiffs clarified that although Quirino and Barranco were paid bi-weekly, the amount recited is each plaintiff's "flat weekly rate." *See* Pls.' Mem. at 18; Damages Calculations, Dkt. 24-8 at ECF pages 2, 4, 6 ("Weekly Salary (Paid Bi-Weekly)").

Dkt. 24-12.  Barranco worked at T-Bone Diner for two terms of employment -- from February 2012 until March 2020 and from March 2021 until February 2022.  Compl. ¶ 43; Barranco Decl. ¶ 4.  Barranco worked six days per week but his  schedule varied over time.  Compl. ¶¶ 44, 45; Barranco Decl. ¶¶ 6, 7.  From May 2016 until December 2017, Barranco worked from 6:00 p.m. to 6:00 a.m., six days per week, for a total of 72 hours per week.  Compl. ¶ 45(i); Barranco Decl. ¶ 7.  From January 2018 to March 2020, Barranco worked from 4:00 p.m. until 12:00 a.m. on Monday, Tuesday, Wednesday and Sunday, and from 4:00 p.m. to 2:00 a.m. on Friday and Saturday, for a total of 52 hours per week.  Compl. ¶ 45(ii); Barranco Decl. ¶ 7.  From March 2021 to February 2022, Barranco worked from 8:00 a.m. to 11:00 p.m. six days per week, for a total of 90 hours per week.  Compl. ¶ 45(iii); Barranco Decl. ¶ 7.

From May 2016 through March 2020, defendants paid Barranco $650 per week.  Compl. ¶ 47(i); Barranco Decl. ¶ 9; *see also* n.1, above.  From March 2021 until February 2022, defendants paid Barranco $370 per week.  Compl. ¶ 47(ii); Barranco Decl. ¶ 9.  Barranco was not paid at all for his last three months of employment.  Compl. ¶ 52; Barranco Decl. ¶ 10.

Barranco alleges that he was not paid an overtime premium for those hours he worked in excess of 40 per week, was not paid the required minimum wage throughout his employment, was not compensated at all for his last three months working for defendants and was not paid a spread of hours premium for each day that he worked more than ten hours.  Compl. ¶¶ 48-50.  In addition, defendants never provided Barranco with a paystub or wage statement.  *See* Barranco Decl. ¶ 11.

### B.    Defendants' FLSA and NYLL Violations

Plaintiffs allege that defendants failed to pay plaintiffs minimum and overtime wages pursuant to the FLSA and NYLL (First, Second, Third, and Fourth Causes of Action); failed to

pay agreed-upon wages under the FLSA and NYLL (Sixth and Seventh Causes of Action); failed to pay wages on a weekly basis under the NYLL (Eighth Cause of Action); failed to provide a wage notice at the time of hire and detailed paystub information on paydays, under the NYLL Wage Theft Prevention Act ("WTPA"), *see* N.Y. Labor Law §§ 195(1)(a), 195(3) (Ninth and Tenth Causes of Action) and with respect to Barranco, failed to pay compensation under New York's spread of hours provision (Fifth Cause of Action).

On May 13, 2022, plaintiffs timely commenced this action. Both defendants were served in May 2022. *See* Dkts. 8, 9. Based on the affidavits of service, this Court finds that plaintiffs properly served defendants Peter Plevritis and Maredin Restaurant Corp. in accordance with Rules 4(e) and 4(h), respectively, of the Federal Rules of Civil Procedure. Defendants have failed to answer the Complaint or otherwise appear in this case. On July 15, 2022, the Clerk entered a Certificate of Default as to all defendants. *See* Dkt. 13. On May 17, 2023, plaintiffs moved for default judgment. *See* Dkts. 23-26.[2]

## II.    Discussion

### A.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure governs motions for default judgment. The Rule sets forth a two-step process for entry of a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. *See id.*; *see also* Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). This first step is

---

[2] Plaintiffs' original motion for default judgment was denied without prejudice for failure to comply with this Court's Local Civil Rules. *See* Order dated 4/17/2023.

nondiscretionary.  *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017).  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment.  *See* Fed. R. Civ. P. 55(a), (b)(2).

Here, on July 15, 2022, the Clerk of the Court entered a default against defendants, after defendants failed to respond to the Complaint.  *See* Dkt. 13.  To date, defendants have not appeared or moved to vacate the entry of default.

Whether or not a default judgment is issued is within the discretion of the court.  When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." (internal quotations and citations omitted)).

"Default judgments are 'generally disfavored and are reserved for rare occasions.'"  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil*, 10 F.3d at 96).  Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort.  *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of

the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id.* at 95. Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

A default serves as the defendant's admission that the complaint's well-pleaded factual allegations are true. *See Mickalis Pawn Shop*, 645 F.3d at 137; *Finkel*, 577 F.3d at 84 (after default the "court is required to accept all of the [plaintiff's] [well-pleaded] allegations as true and draw all reasonable inferences in its favor."). A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-03259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotations and citations omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

Here, defendants did not respond to the Complaint despite proper service. Plaintiffs filed affidavits of service confirming service of the motion for default judgment and this Court's order scheduling a hearing on the motion. *See* Dkts. 26, 27. Defendants have nonetheless failed to

respond to plaintiffs' motion for default judgment or otherwise appear in this action. Accordingly, this Court recommends finding that defendants' failure to answer or otherwise respond to the Complaint constitutes an admission of the factual allegations therein, and now proceeds to consider whether those facts establish defendants' liability under federal and state law.

### B.    FLSA

"The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers." *Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2019 WL 1299194, at *2 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019); *see also Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224 (2014). To demonstrate entitlement to minimum wage and overtime protections under the FLSA, a plaintiff must show that (1) an employer-employee relationship exists, and (2) the employment falls under the FLSA's individual or enterprise coverage provisions. *See Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-CV-04761, 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wages for qualifying employees); *id.* § 207(a)(1) (providing for overtime wages for qualifying employees).

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and a "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," *id.* § 203(a). The FLSA further defines the term "employee" as "any individual employed by an employer." *Id.* § 203(e)(1). "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not

an employer." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

There is "no rigid rule for the identification of an FLSA employer." *Teri v. Spinelli*, 980 F. Supp. 2d 366, 374-75 (E.D.N.Y. 2013) (citing *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)).  Rather, the touchstone in determining whether an individual is an employer is "operational control" over employees, meaning whether the individual exercises control over and makes decisions that "directly affect the nature or conditions of the employees' employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013).  Thus, to determine whether a party qualifies as an "employer" under the FLSA, "the overarching concern" that courts consider is "whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman*, 172 F.3d at 139 (citing *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961)); *see Guerrero*, 2019 WL 4889591, at *4.

When examining the "economic reality" of a particular situation, the following factors are relevant:  "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104-05 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  Despite these enumerated factors, however, a district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship.  *See Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003).  "In accordance with these principles, a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation." *Espinoza v. La Oficina Bar Corp.*, No. 20-CV-1237, 2022 WL 987429, at *10 (E.D.N.Y. Mar. 1, 2022) (internal quotation marks and citation

10

omitted), *report and recommendation adopted*, 2022 WL 985836 (E.D.N.Y. Mar. 31, 2022); *see Herman*, 172 F.3d at 139.  Accordingly, "joint employers, including corporate officers with the 'power to control,' may be held jointly and severally liable for FLSA violations." *Espinoza*, 2022 WL 987429, at *10.

Moreover, for the FLSA's minimum wage and overtime provisions to apply to an individual employee, the employee must have been "engaged in commerce or in the production of goods for commerce," or where the employer is "an enterprise engaged in commerce or in the production of goods for commerce," *id*. § 207(a)(1), with an annual gross volume of sales of at least $500,000, *id.* § 203(s)(1)(A)(ii).  *See Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) ("To be 'engaged in commerce,' the employee must perform work 'involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof.'").

Plaintiffs' unopposed allegations are sufficient to show that defendants qualify as their joint employers for purposes of the FLSA's protections.  First, plaintiffs sufficiently demonstrated that the individual defendant Peter Plevritis employed plaintiffs under the definition of the FLSA.  Plaintiffs allege that Plevritis is the owner of T-Bone Diner, hired each of the plaintiffs, set their rates and methods of pay, directly paid their wages, and set their work schedules.  Compl. ¶¶ 11, 13-18.  As the "economic reality" factors are clearly satisfied by plaintiffs' allegations, this Court thus finds that the individual defendant Peter Plevritis employed plaintiffs under the definition of the FLSA.  *See Irizarry*, 722 F.3d at 104-05; *see also Sarmiento Perez v. Comhar Grp., LLC*, No. 19-CV-0964, 2020 WL 1364908, at *3-*4 (E.D.N.Y. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020);

11

*Rodriguez v. Solares Corp.*, No. 16-CV-3922, 2018 WL 7252949, at *4 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).

Second, plaintiffs allege that the corporate defendant owned and operated T-Bone Diner. Plaintiffs' allegations that Plevritis and T-Bone Diner are part of a common ownership or management of a business, coupled with defendants' default, are sufficient to allege joint employment following a default. *See Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011). Based on the plaintiffs' allegations, this Court finds that defendants are jointly and severally liable as plaintiffs' employers for any judgment resulting from plaintiffs' claims in this action. *See Herman*, 172 F.3d at 139; *Espinoza*, 2022 WL 987429, at *13.

Third, plaintiffs' allegations are sufficient to conclude that the defendants operated in interstate commerce. Plaintiffs' allegations that T-Bone Diner has annual revenue in excess of $500,000 and that the corporate defendant is an "enterprise[] engaged in interstate commerce," Compl. ¶ 20, satisfy the pleading requirement for enterprise coverage subject to the requirements of the FLSA in a default proceeding. *See Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314, 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015) ("Plaintiffs' specific allegation that Defendants have an annual gross revenue in excess of $500,000.00, though somewhat conclusory, is sufficient to meet the pleading requirement under the FLSA."), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015). Although plaintiffs' allegations are sparse in this regard, courts addressing motions for default judgment have found similar conclusory but undisputed allegations to be sufficient to satisfy the interstate commerce requirement. *See Espinoza*, 2022 WL 987429, at *13 n.13 (collecting cases); *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411, 2017 WL 835321, at *5 (E.D.N.Y. Feb. 14, 2017), *report and recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017).

Accordingly, this Court recommends finding that the allegations in plaintiffs' Complaint, admitted by entry of default, are sufficient to conclude that the individual defendant jointly employed plaintiffs with T-Bone Diner, and plaintiffs' employment falls under the FLSA's protections.[3]

C.    NYLL

As with the FLSA, the NYLL covers certain activities or practices affecting employers and employees. The NYLL defines an employer as a "person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3). An employee is defined as "any person employed for hire by an employer in any employment." *Id.* § 190(2). The NYLL's definitions with respect to "employer status" are nearly identical to the FLSA's definitions and have been interpreted coextensively. *See Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16-CV-5735, 2017 WL 2600051, at *3 (S.D.N.Y. June 15, 2017). Accordingly, "courts use the same tests to determine joint employment under both the NYLL and the FLSA." *Khan v. Nyrene, Inc.*, No. 18-CV-557, 2020 WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020), *report and recommendation adopted*, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020).

For the reasons discussed, this Court recommends finding that plaintiffs were jointly

---

[3] The FLSA has a two-year statute of limitations, unless a plaintiff shows that the employer's actions were willful, in which case the limitations period extends to three years. S*ee* 29 U.S.C. § 255(a). The NYLL has a six-year statute of limitations. S*ee* N.Y. Lab. Law § 663(3). Plaintiffs allege that defendants willfully violated both the FLSA and the NYLL. *See* Compl. ¶¶ 29, 41, 49. "Generally, courts have found that a defendant's default establishes willfulness." *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015); *see also Suarez Castaneda v. F&R Cleaning Servs. Corp.*, No. 17-CV-7603, 2019 WL 5694118, at *7 (E.D.N.Y. Mar. 15, 2019), *report and recommendation adopted*, 2019 WL 5693768 (E.D.N.Y. July 8, 2019) (applying three-year statute of limitations period); *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)) ("In the present case, defendants defaulted, and therefore the three-year statute of limitations applies."). Because defendants have defaulted, this Court applies the three-year limitations period for FLSA violations.

employed by the individual defendant and T-Bone Diner under the NYLL. *See Leon v. Zita Chen*, No. 16-CV-480, 2017 WL 1184149, at *6 (E.D.N.Y. Mar. 29, 2017); *Rodriguez v. Almighty Cleaning, Inc*., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011) ("Courts in this circuit have held that the same analysis applies when determining whether defendants are jointly liable as employers under the FLSA and the NYLL.") (collecting cases).

### D.    Minimum Wages

Both the FLSA and the NYLL require employers to pay employees at a minimum hourly rate. *See* 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652. The applicable minimum wage under the NYLL for a New York City employer with eleven or more employees[4] was $9.00 on or after December 31, 2015, $11.00 on or after December 31, 2016, $13.00 on or after December 31, 2017, and $15.00 per hour on or after December 31, 2018. *See* N.Y. Lab. Law § 652(1)(a)(ii). Given that the minimum wage under the NYLL is higher than that of the FLSA for all relevant time periods, this Court analyzes plaintiffs' minimum wage entitlement under the NYLL. *See* 29 C.F.R. § 778.5; *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 43 (E.D.N.Y. 2015).

As discussed below, plaintiffs allege that they were paid less than the statutory minimum wage for at least part of their employment. Therefore, plaintiffs are entitled to recover those unpaid minimum wages pursuant to the NYLL. *See Espinoza*, 2022 WL 987429, at *14.

### E.    Overtime Wages

Under the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc*., 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a) and N.Y. Comp. Codes R. & Regs., tit. 12 § 142-2.2). Here,

---

[4] Here, plaintiffs allege that defendants had more than 20 employees. *See* Compl. ¶ 60; Anzures Decl. ¶ 15; Quirino Decl. ¶ 15; Barranco Decl. ¶ 14.

plaintiffs allege that they regularly worked for defendants in excess of 40 hours per week, but were not paid the requisite premium for those overtime hours.  Thus, plaintiffs have sufficiently alleged claims against defendants for unpaid overtime under the FLSA and the NYLL.

### F.    Unpaid Agreed-Upon Wages (Anzures and Barranco)

Plaintiffs Anzures and Barranco further allege that defendants failed to pay them entirely for certain weeks, in violation of the FLSA and the NYLL.  *See* Compl. ¶¶ 96, 101; Anzures Decl. ¶ 12; Barranco Decl. ¶ 10.  However, one area in which the NYLL differs from the FLSA is the extent to which an employee may recover their unpaid agreed-upon wages.  Under the FLSA, a plaintiff may recover for unpaid "straight time" only up to the minimum wage rate.  *See Villar v. Prana Hosp., Inc.*, No. 14-CV-8211, 2017 WL 1333582, at *4 (S.D.N.Y. Apr. 11, 2017), *report and recommendation adopted*, 2018 WL 3579841 (S.D.N.Y. July 25, 2018).  In contrast, under various sections of the NYLL, a plaintiff may recover for unpaid "straight" time at the agreed-upon (or regular) rate where it exceeds the minimum wage.  *See Shetty v. SG Blocks, Inc.*, No. 20-CV-0050, 2020 WL 3183779, at *5 (E.D.N.Y. June 15, 2020); *Villar*, 2017 WL 1333582, at *4 (citing cases relying on sections 191 or 198).

Here, plaintiffs Anzures and Barranco have asserted that, despite their agreement with defendants, defendants failed to pay them for all of the straight-time hours that they worked.  Thus, plaintiffs have sufficiently alleged that they were not paid their earned wages in accordance with the agreed terms of their employment, as required by the NYLL.

### G.    Spread of Hours (Barranco)

Another area in which the NYLL differs from the FLSA is the NYLL's requirement that an employer pay employees a "spread-of-hours" premium that is equal to "one additional hour of pay at the basic minimum hourly rate" for each day an employee works in excess of ten hours.

*See* N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.6.  The spread-of-hours mandate applies to "all employees in restaurants . . ., regardless of a given employee's regular rate of pay."  *Id.* § 146-1.6(d).

Plaintiff Barranco seeks recovery for spread-of-hours compensation for one hour's pay at the basic minimum hourly rate for each day that he worked more than ten hours.  Compl. ¶ 50.  As Barranco alleges that he worked at T-Bone Diner more than ten hours per day at various times during his employment, he has sufficiently alleged a claim for relief.

### H.    Wage Theft Prevention Act

The NYLL's WTPA requires that employers provide employees, at the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage . . . ; the regular pay day . . .; the name of the employer; . . . [and] the regular hourly rate and overtime rate of pay."  N.Y. Lab. Law § 195(1)(a).  In addition, section 195(3) of the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."  N.Y. Lab. Law § 195(3).

Plaintiffs sufficiently allege that defendants failed to provide each plaintiff with the wage notice required by the WTPA, section 195(1)(a) of the NYLL.  In addition, the Complaint sufficiently alleges that defendants failed to provide plaintiffs with proper wage statements, in violation of section 195(3) of the NYLL.  Therefore, plaintiffs have adequately stated claims for violations of the WTPA.  *See Espinoza*, 2022 WL 987429, at *15.

### III.   Relief

A party's default "is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  Accordingly, the court must conduct an inquiry sufficient to determine the extent of damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).  A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

### A.   Unpaid Wages Due

"Under both the FLSA and NYLL, an employer is required to maintain records of the wages, hours, and persons employed by him [or her]." *Lu Nan Fan v. Jenny & Richard's Inc.*, No. 17-CV-6963, 2019 WL 1549033, at *9 (E.D.N.Y. Feb. 22, 2019) (internal quotations and citation omitted), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019); *see Espinoza*, 2022 WL 987429, at *5.  Where, as here, defendants, having defaulted, fail to produce the requisite records, a plaintiff's sworn statement "containing information as to hours worked and rates of pay based on estimation and recollection," satisfies a plaintiff's burden of establishing how many hours he or she worked and how much he or she was paid.  *See Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977, 2017 WL 3491964, at *3 (E.D.N.Y. July 19, 2017) (internal quotations and citation omitted), *report and recommendation adopted*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017); *see also Herrera*, 2015 WL 1529653, at *8.  "Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate." *Lu Nan Fan*, 2019 WL 1549033, at *9.

Here, plaintiffs have submitted their own declarations describing their dates of employment, along with average hours worked and wages paid per week. Based on those declarations, plaintiffs' counsel calculated the damages due to plaintiffs. *See* Dkt. 24-8. In light of defendants' default, the evidence submitted by plaintiffs stands uncontroverted, and, therefore, plaintiffs have provided a sufficient basis upon which to determine damages.

### 1.    Regular Wage Rate

To calculate a plaintiff's minimum wage and overtime compensation, the Court must first determine the plaintiff's regular hourly wage rate. *See Xin Long Lin v. New Fresca Tortillas, Inc.*, No. 18-CV-3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019); *Santillan v. Henao*, 822 F. Supp. 2d 284, 295 (E.D.N.Y. 2011). Under the FLSA, the regular rate is defined "as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he [or she] is employed" and is "drawn from what happens under the employment contract." 29 C.F.R. § 778.108. Because plaintiffs were compensated on a weekly basis, the regular hourly rate is calculated by "dividing the salary by the number of hours which the salary is intended to compensate." *Id.* § 778.113(a).

Under the FLSA, "[t]here is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (quoting *Jiao v. Shi Ya Chen*, No. 03-CV-0165, 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007)); *see Brito v. ATA Freight Line, Ltd.*, No. 20-CV-3132, 2021 WL

7830146, at *8 (E.D.N.Y. Aug. 24, 2021); *Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *8 (S.D.N.Y. Mar. 9, 2020) ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement.") (quoting *Pinovi v. FSS Enters., Inc.*, No. 13-CV-2800, 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015)).  Similarly, a New York Labor Law regulation provides that a restaurant employee's regular hourly rate is determined by dividing the employee's weekly earnings by the lesser of forty hours or the hours actually worked.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5 (where "an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.").

Here, each plaintiff alleges that they were paid "the same [amount] regardless of the number of hours that [they] worked."  Anzures Decl. ¶ 14; *see also* Quirino Decl. ¶ 14; Barranco Decl. ¶ 13.  No employment contract was submitted with plaintiffs' moving papers and defendants have not appeared in this action to present testimony or evidence as to the parties' understanding of the compensation scheme at issue.  Accordingly, plaintiffs correctly calculated their regular rates of pay by applying the formula contained in section 146-3.5(b) and dividing their weekly wages by up to 40 hours (s*ee* Dkt. 24-8).  *See Urena v. 0325 Tuta Corp.*, No. 20-CV-3751, 2022 WL 4284879, at *4 (S.D.N.Y. Sept. 16, 2022).

### a.    Santiago Anzures

For the period May 2016 through December 2019, Anzures was paid $575 per week regardless of the number of hours he worked, which ranged from 40 hours to 56 hours per week. *See* Anzures Decl. ¶¶ 7-9; Compl. ¶¶ 25-26.  Therefore, his regular rate of pay during that period

was $14.38 per hour ($575 ÷ 40 hours).

During 2020, defendants continued to pay $575 per week, but he worked only 30 hours per week.  *See* Anzures Decl. ¶¶ 7-9; Compl. ¶¶ 25-26.  Therefore, his regular rate of pay for 2020 was $19.17 per hour ($575 ÷ 30 hours).

For the period January 2021 to February 2022, Anzures was paid $270 per week and worked 18 hours per week.  *See* Anzures Decl. ¶¶ 7-9; Compl. ¶¶ 25-26.  Therefore, his regular rate of pay for that period was $15.00 per hour ($270 ÷ 18 hours).

### b.    Alfredo Sanchez Quirino

For the period May 2016 through February 2020, Quirino was paid $640 per week and worked 60 hours per week.  *See* Quirino Decl. ¶ 9; Compl. ¶ 35.  Therefore, his regular rate of pay for that period was $16.00 per hour ($640 ÷ 40 hours).

### c.    Eleazar Mendez Barranco

For the period May 2016 through March 2020, Barranco was paid $650 per week regardless of the number of hours he worked, which ranged from 52 hours to 72 hours per week. See Compl. ¶¶ 45-47; Barranco Decl. ¶¶ 7-9.  Therefore, his regular rate of pay for that period was $16.25 per hour ($650 ÷ 40 hours).  For the period March 2021 through February 2022, Barranco was paid $370 per week and worked 90 hours per week.  *See* Compl. ¶¶ 45-47; Barranco Decl. ¶¶ 7-9.  Therefore, Barranco's regular rate of pay for that period was $9.25 per hour ($370 ÷ 40 hours).

### 2.    Unpaid Minimum Wages

### a.    Santiago Anzures

Within the six-year statute of limitations applicable under the NYLL, Anzures performed work for defendants from May 2016 through February 2022.  However, Anzures alleges that

defendants failed to pay him minimum wages only for 2019.  *See* Compl. ¶ 29*;* Calculation of Damages, Dkt. 24-8 at ECF page 2.

During 2019, since defendants paid Anzures at a regular hourly rate of $14.38, they paid Anzures approximately $0.62 below the hourly minimum wage rate ($15.00 - $14.38). Therefore, Anzures is owed $24.80 for the first 40 hours he worked in each week ($0.62 x 40 hours).  In total, plaintiffs correctly calculated that Anzures is owed **$1,289.60** ($24.80 × 52 weeks) for this period.

### b.    Alfredo Sanchez Quirino

Quirino seeks minimum wages owed for the period March 2020 through February 2022, during which he worked 60 hours per week but defendants did not pay him any compensation.[5] *See* Compl. ¶¶ 38, 39, 41; Calculation of Damages, Dkt. 24-8 at ECF page 4.  Since Quirino worked more than 40 hours per week, he is owed $600 per week ($15 per hour x 40 hours) for the first 40 hours that he worked in each week.  In total, Quirino is owed **$62,484.00** ($600 per week x 104.14 weeks)[6] for the period.

### c.    Eleazar Mendez Barranco

Barranco alleges that he is owed minimum wages for the period March 31, 2021 through February 28, 2022.  *See* Compl. ¶ 49; Calculation of Damages, Dkt. 24-8 at ECF page 6.  During that period, since defendants paid Barranco a regular hourly rate of $9.25, they paid Barranco $5.75 below the hourly minimum wage rate ($15.00 - $9.25).  Therefore, Barranco is owed $230 ($5.75 x 40 hours) for the first 40 hours he worked in each week.  Although the Court would have been prepared to calculate minimum wage damages beginning on March 1, 2021 based on

---

[5] Defendant Plevritis told Quirino that he would receive only tips during this period.  *See* Quirino Decl. ¶ 10.

[6] The period March 1, 2020 though February 28, 2022 consists of 104 weeks and 1 day.

Barranco's sworn statement that his weekly pay was reduced in March 2021 (Barranco Decl. ¶ 9), the Court adopts plaintiffs' starting point of March 31, 2021, since the delayed accrual date benefits defendants. *See* Calculation of Damages, Dkt. 24-8 at ECF page 6. Therefore, Barranco is owed **$10,973.30** ($230 per week x 47.71 weeks)[7] for this period.

In sum, this Court recommends awarding unpaid minimum wages as follows: plaintiff Anzures is owed **$1,289.60**; plaintiff Quirino is owed **$62,484.00**; and plaintiff Barranco is owed **$10,973.30**.

|  | Time Period | Regular Rate | Minimum Wage Rate | Owed Per Week | Weeks | **Total** |
|---|---|---|---|---|---|---|
| Anzures | 1/1/2019-12/31/2019 | $14.38 | $15.00 | $ 24.80 | 52.00 | **$1,289.60** |
| Quirino | 3/1/2020-2/28/2022 | $ 0.00 | $15.00 | $600.00 | 104.14 | **$62,484.00** |
| Barranco | 3/31/2021-2/28/2022 | $ 9.25 | $15.00 | $230.00 | 47.71 | **$10,973.30** |
| **Total** |  |  |  |  |  | **$74,746.90** |

### 3.    Unpaid Overtime Compensation

Under the FLSA and the NYLL, an employer must pay an employee overtime compensation at 1.5 times the employee's regular rate of pay for each hour worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL). "An employee's appropriate overtime rate is calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half." *Guerrero*, 2019 WL 4889591, at *8

---

[7] The period March 31, 2021 through February 28, 2022 consists of 47 weeks and 5 days.

(internal quotations and citation omitted).

### a.    Santiago Anzures

Anzures sufficiently demonstrates that defendants failed to pay him at time-and-a-half for 16 hours per week from May 2016 through December 2017, and for 10 hours per week throughout 2018.  *See* Anzures Decl. ¶¶ 7-9, 14.  As discussed above, during this time period, Anzures was paid at a rate higher than the applicable minimum wage.  Thus, the Court will apply an overtime rate of 1.5 times the rate of $14.38 per hour or $21.57.  Accordingly, this Court recommends awarding Anzures $345.12 per week ($21.57 per hour x 16 hours per week) in unpaid overtime wages for the period May 2016 through December 2017 (87 weeks), for a total of $30,025.44.  The Court further recommends awarding Anzures $215.70 per week ($21.57 per hour x 10 hours per week) in unpaid overtime wages for 2018 (52 weeks), for a total of $11,216.40.  In sum, this Court recommends awarding Anzures **$41,241.84** in unpaid overtime wages.

### b.    Alfredo Sanchez Quirino

Quirino establishes that defendants did not pay him overtime wages for 20 hours he worked per week from May 2016 through February 2022.  For those weeks during Quirino's period of employment for which he was paid at a rate higher than the minimum wage, the Court applies an overtime rate of 1.5 times the employee's regular rate of pay.  For weeks in which Quirino was paid at a rate lower than the minimum wage, the Court applies an overtime rate of 1.5 times the minimum wage.

For the period May 2016 through February 2020 (199.71 weeks),[8] this Court

---

[8] Plaintiffs' calculations erroneously double counted the period between March 1, 2020 to February 28, 2022.  *See* Dkt. 24-8 at ECF page 4 ("5/1/2016 to 2/28/2022" and "3/1/2020 to 2/28/2022").  This miscalculation resulted in a substantial overstatement of the overtime wages owed to Quirino.

recommends awarding Quirino $480 per week ($24 per hour x 20 overtime hours per week) in unpaid overtime wages, for a total of $95,860.  The Court further recommends awarding Quirino, for the period March 2020 through February 2022 (104.14 weeks), $450.00 per week ($22.50 per hour x 20 hours per week) in unpaid overtime wages, for a total of $46,863.  In sum, this Court recommends awarding Quirino **$142,723** in unpaid overtime wages.

### c.    Eleazar Mendez Barranco

Barranco is entitled to damages for 32 overtime hours worked per week from May 2016 through December 2017, 12 overtime hours worked per week from January 2018 through March 2020, and 50 overtime hours worked per week from March 2021 through February 2022.[9] Accordingly, this Court recommends awarding Barranco, for the period May 2016 through December 2017 (87 weeks), $780.16 per week ($24.38 per hour x 32 hours per week) in unpaid overtime wages for a total of $67,873.92.  The Court further recommends awarding Barranco, for the period January 2018 through March 2020 (117.14 weeks), $292.56 per week ($24.38 per hour x 12 hours per week) in unpaid overtime wages for a total of $34,270.48.  Finally, the Court recommends awarding Barranco, for the period March 2021 through February 2022 (47.71 weeks), $1,125 per week ($22.50 per hour x 50 hours per week) in unpaid overtime wages for a total of $53,673.75.  In sum, this Court recommends awarding Barranco **$155,818.15** in unpaid overtime wages.

---

[9] For those weeks that Barranco was paid at a rate higher than the minimum wage, the Court will apply an overtime rate of 1.5 times his regular pay.  For those weeks in which Barranco was paid at a rate lower than the minimum wage, the Court will apply an overtime rate of 1.5 times the minimum wage.

|  | Time Period | Regular Rate | Overtime Rate | Overtime Hours | Owed Per Week | Weeks | Total |
|---|---|---|---|---|---|---|---|
| Anzures | 5/1/2016-12/31/2017 | $14.38 | $21.57 | 16 | $ 345.12 | 87.00 | $ 30,025.44 |
|  | 1/1/2018-12/31/2018 | $14.38 | $21.57 | 10 | $ 215.70 | 52.00 | $ 11,216.40 |
| **Anzures Total** |  |  |  |  |  |  | **$ 41,241.84** |
| Quirino | 5/1/2016-2/28/2020 | $16.00 | $24.00 | 20 | $ 480.00 | 199.71 | $ 95,860.00 |
|  | 3/1/2020-2/28/2022 | $15.00 | $22.50 | 20 | $ 450.00 | 104.14 | $ 46,863.00 |
| **Quirino Total** |  |  |  |  |  |  | **$142,723.00** |
| Barranco | 5/1/2016-12/31/2017 | $16.25 | $24.38 | 32 | $ 780.16 | 87.00 | $ 67,873.92 |
|  | 1/1/2018-3/30/2020 | $16.25 | $24.38 | 12 | $ 292.56 | 117.14 | $ 34,270.48 |
|  | 3/31/2021-2/28/2022 | $15.00 | $22.50 | 50 | $1,125.00 | 47.71 | $ 53,673.75 |
| **Barranco Total** |  |  |  |  |  |  | **$155,818.15** |
| **All Plaintiffs** |  |  |  |  |  |  | **$339,782.99** |

### B.    Spread of Hours Compensation

The NYLL provides that if the length of time between the beginning and end of an employee's workday (or the employee's "spread of hours") surpasses ten hours, the employer must pay the employee an additional hour of pay at the minimum wage.  *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 500 (S.D.N.Y. 2017) (quoting 12 N.Y.C.R.R. § 146-1.6), *aff'd*, 752 F. App'x 33 (2d Cir. 2018) ; *see also Pineda v. Tokana Café Bar Restorant Inc.*, No. 16-CV-1155, 2017 WL 1194242, at *3 (S.D.N.Y. Mar. 30, 2017).  "Spread of hours" includes "working time plus time off for meals plus intervals off duty."  *Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2021 WL 6804252, at *9 (E.D.N.Y. Nov. 9, 2021) (quoting N.Y. Comp. Code R. & Regs. tit. 12 § 146-1.6), *aff'd*, 2023 WL 2395995 (2d Cir. Mar. 8, 2023).  Restaurant

workers are entitled to a spread of hours premium regardless of their regular rate of pay.  *See* N.Y. Comp. Code R. & Regs. tit. 12 § 146-1.6(d).

Barranco alleges that from May 2016 through December 2017, he worked for 12 hours per day for six days per week; from January 2018 until March 2020, he worked for 8-10 hours per day for six days per week; and from March 2021 through February 2022, he worked 15 hours per day for six days per week.  *See* Barranco Decl. ¶ 7.  Barranco alleges that defendants failed to pay him for an additional hour of pay at the minimum wage for those days.  *See* Compl. ¶ 50. The Court recommends granting Barranco's request for spread of hours pay, except for the period January 1, 2018 through February 28, 2020, when Barranco alleges that he worked no more than 10 hours per day.  *See* Compl. ¶ 45(ii); Barranco Decl. ¶ 7; *Herrera v. Tri-State Kitchen and Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *5 (E.D.N.Y. Mar. 31, 2015).

For 2016, Barranco is entitled to spread of hours pay, which totals **$1,882.44** ($9.00 per hour x 6 days per week x 34.86 weeks).  For 2017, Barranco should have been paid spread of hours pay in the amount of **$3,432.00** ($11.00 x 6 days x 52 weeks).  For March 2021 through February 2022, Barranco should have been paid $15.00 for 6 days per week, which totals **$4,680.00** ($15.00 x 6 days x 52 weeks).  Adding the foregoing amounts together, this Court recommends awarding Barranco spread of hours pay in the amount of **$9,994.44** ($1,882.44 + $3,432.00 + $4,680.00).

| Time Period | Minimum Wage Rate | Spread of Hours Days | Weeks | Total |
|---|---|---|---|---|
| 5/1/2016-12/31/2016 | 9.00 | 6 | 34.86 | $1,882.44 |
| 1/1/2017-12/31/2017 | 11.00 | 6 | 52 | $3,432.00 |
| 3/1/2021-2/28/2022 | 15.00 | 6 | 52 | $4,680.00 |
| **Total** | | | | **$9,994.44** |

**C.    Statutory Damages under the Wage Theft Prevention Act**

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule.  After February 27, 2015, violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000.  *See* N.Y. Lab. Law § 198(1-b).  Further, section 195(3) of the NYLL requires employers to furnish employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details."  *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotations and citation omitted).  After February 27, 2015, violations of Section 195(3) carry damages of $250 per workday, up to a maximum of $5,000.  *See* N.Y. Lab. Law § 198(1-d).[10]

Here, plaintiffs allege that they never received a wage notice or wage statements from defendants at any point during the course of their employment.  *See* Compl. ¶¶ 108, 111. Because each plaintiff worked without a wage notice or a wage statement for more than 100 days after February 27, 2015, this Court recommends awarding each plaintiff the maximum statutory damages of $5,000 for violations of N.Y. Lab. Law § 195(1), and $5,000 for violations of N.Y. Lab. Law § 195(3), for a total of **$10,000**.  *See Sarmiento Perez*, 2020 WL 1364908, at *6; *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633, 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019).

**D.    Agreed-Upon Wages**

In addition to their minimum wage claims, plaintiffs Anzures and Barranco assert claims

---

[10] Prior to February 27, 2015, employees were entitled to recover statutory damages for wage notice violations of $50 per work week, not to exceed $2,500, and for wage statement violations of $100 per work week, not to exceed $2,500.  *See Cazarez v. Atl. Farm & Food Inc.*, No. 15-CV-2666, 2017 WL 3701687, at *6 (E.D.N.Y. May 31, 2017), *report and recommendation adopted*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017).

for unpaid agreed-upon wages pursuant to Article 6 of the NYLL.  *See* Compl. ¶ 101; Pls.' Mem. at 25.  Plaintiffs bear the burden of demonstrating that they were not paid their agreed-upon wages by presenting evidence to establish the extent of their damages.  *See Ventura v. Putnam Gardens Parking Corp.*, No. 20-CV-119, 2023 WL 3603589, at *8 (S.D.N.Y. Mar. 20, 2023), *report and recommendation adopted*, 2023 WL 3601649 (S.D.N.Y. May 23, 2023).

Anzures avers that he "was not compensated at all for approximately ten weeks of employment within the relevant statutory period."  Anzures Decl. ¶ 12; Compl. ¶ 30.  Anzures further explains that "[f]or certain weeks through the period, [defendant Plevritis] would not pay me on time and I expected to receive my pay at a later time but Defendants would not make up the amounts owed to me."  Anzures Decl. ¶ 12.  However, Anzures does not identify when during his employment period that defendants failed to pay him any wages.  Thus, Anzures has not provided sufficient detail regarding his claim for unpaid agreed-upon wages to establish the amount of damages to a reasonable certainty.  *See Ventura*, 2023 WL 3603589, at *8 (recommending that no damages be awarded for failure to pay agreed-upon-wages where plaintiff's declaration lacked details as to when he did not receive pay from employer).  In addition, counsel's calculation of Anzures' damages appears to be erroneously based on his having worked unpaid for **35 weeks**, rather than **10 weeks**, as Anzures attests in his declaration and pleads in the Complaint.  *Compare* Pls.' Mem. at 25 ("Plaintiff [Anzures] was not compensated at all for approximately *thirty-five (35) weeks* of employment within the relevant statutory period.") (emphasis added), *with* Compl. ¶ 30 (Anzures "was not compensated at all for approximately *ten weeks* of employment within the relevant statutory period") (emphasis added), *and* Anzures Decl. ¶ 12 (same).   Accordingly, the Court recommends denying Anzures' request for damages on this claim.

As to Barranco, he avers that he "was not compensated at all for my last 3 months of work by the Defendants."  Barranco Decl. ¶ 10; *see* Compl. ¶ 52.  However, unlike Anzures, Barranco provides sufficient specific information to establish the amount of unpaid agreed-upon wages to a reasonable certainty.  Barranco was entitled to a weekly salary in the amount of $370, but was not paid at all for the hours that he worked from December 1, 2021 until his employment ended on February 28, 2022.  *See* Barranco Decl. ¶¶ 4, 9, 10.  As requested, this Court recommends awarding Barranco **$4,702.70** for unpaid agreed-upon wages under the NYLL ($370 per week x 12.71 weeks).

### E.    Liquidated Damages

#### 1.    Unpaid Wages

The FLSA and the NYLL both allow for liquidated damages awards equaling 100 percent of the wages due.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Under the FLSA, a district court is "generally required" to award a plaintiff liquidated damages equal in amount to the unpaid minimum and/or overtime wages, *Barfield*, 537 F.3d at 150; however, courts may, in their discretion, decline to award liquidated damages where employers "show[] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA.  *See* 29 U.S.C. § 260.  Similarly, "[u]nless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." the NYLL permits employees to recover "an additional amount as liquidated damages equal to [100] percent of the total amount of the wages found to be due."  N.Y. Lab. Law § 198(1-a).

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct."  *Rana v. Islam*, 887 F.3d 118,

123 (2d Cir. 2018).  "In light of the principle that the law providing the greatest recovery will govern, [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722, 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (internal quotations and citation omitted).  However, "[l]iquidated damages are not available for violations of the NYLL wage notice and statement provisions."  *Id.*; *see also* N.Y. Lab. Law § 198(1-a), (1-d).

Here, defendants, having defaulted, have failed to make a showing of good faith.  *See Lu Nan Fan*, 2019 WL 1549033, at *11.  As this Court has calculated plaintiffs' damages according to the NYLL, plaintiffs are entitled to 100 percent of their unpaid wages as liquidated damages. Accordingly, this Court recommends awarding plaintiff Anzures **$42,531.44** ($1,289.60 + $41,241.84) in liquidated damages; plaintiff Quirino **$205,207.00** ($62,484 + $142,723) in liquidated damages; and plaintiff Barranco **$181,488.59** ($10,973.30 + $155,818.15 + $9,994.44 + 4,702.70) in liquidated damages.

### 2.    Late Payments

In addition, plaintiffs seek liquidated damages for defendants' untimely payment of wages.  Section 191 of Article 6 of the New York Labor Law, entitled "Frequency of Payments," sets forth requirements governing an employer's wage payments to manual workers.  Section 191 provides that a manual worker must be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned.  N.Y. Labor Law § 191(1)(a)(i).  Given the nature of plaintiffs' duties as cooks, dishwashers and delivery persons, they are covered by this provision.[11]  *See Rosario v. Icon Burger Acq. LLC*, No. 21-CV-4313, 2022 WL 17553319, at

---

[11] A manual worker is defined as "a mechanic, workingman or laborer."  N.Y. Labor Law § 190(4).  "The New York Department of Labor has elaborated on this terse definition, long interpreting the term to include 'employees who spend more than 25 percent of their working time performing physical labor.'"  *Freeland v. Findlay's Tall Timbers*

*5 (E.D.N.Y. Dec. 9, 2022) (applying section 191 to workers at chain of hamburger restaurants); *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 482 (S.D.N.Y. 2012) ("Cooks and wait staff . . . are classified as 'manual workers' under [New York Labor Law].").

It is well established in this Circuit, that section 191, together with the remedial provisions of section 198, provide manual workers with a private right of action regarding the untimely payment of wages. *See, e.g., Krawitz v. Five Below*, No. 22-CV-2253, 2023 WL 6385711, at *2-*3 (E.D.N.Y. Sept. 29, 2023); *Levy v. Endeavor Air Inc.*, 638 F. Supp. 3d 324, 332 (E.D.N.Y. 2022). Those courts have further found that employees who are not paid on a timely basis suffer a concrete harm sufficient to confer standing to claim damages for the delay. *See, e.g., Krawitz*, 2023 WL 6385711, at *3; *Levy*, 638 F. Supp. 3d at 329-30. Here, because plaintiffs were paid bi-weekly, one-half of each payment received (the half corresponding to the first of the two weeks covered by the payment) was paid late, in violation of section 191.

Rather than seeking actual damages for the delay in payment, plaintiffs seek only liquidated damages, which they calculate "by multiplying their number of bi-weekly payments to their respective converted regular hourly rates and total work hours per week." Pls.' Mem. at 30. Although this Court agrees that plaintiffs are entitled to recover liquidated damages for wages that were paid bi-weekly, the method plaintiffs use to calculate this category of damages results in an award that is duplicative of the liquidated damages already recommended for defendants' failure to pay overtime wages. Plaintiffs' calculation also results in a liquidated damages award that exceeds the amount of late payments actually received by plaintiffs. Rather, liquidated damages for a violation of section 191 should be based only on the failure to pay timely agreed-

---

*Distrib. Ctr., LLC*, No. 22-CV-6415, 2023 WL 4457911, at *5 (W.D.N.Y. July 11, 2023) (quoting N.Y. Dep't of Labor Op. Ltr. No. RO-09-0066 (May 21, 2009)).

upon wages during the first week of each bi-weekly pay period.  *See Bemejo v. Shaker Contrs., Corp.*, No. 22-CV-1427, 2022 WL 17251667, at *5-*6 (S.D.N.Y. Nov. 28, 2022); *Carrera v. DT Hospitality Grp.*, No. 19-CV-4235, 2021 WL 6298656, at *11 (S.D.N.Y. Nov. 1, 2021), *report and recommendation adopted*, 2021 WL 6298654 (S.D.N.Y. Dec. 7, 2021).

Assuming plaintiffs were paid every two weeks rather than twice per month, the Court recommends awarding the following liquidated damages for plaintiff Anzures:

| Time Period | Weekly Salary | Number of Weeks Late[12] | Liquidated Damages |
|---|---|---|---|
| 5/1/2016-12/31/2020 | $575.00 | 121.79 | $70,029.25 |
| 1/1/2021-2/28/2022 | $270.00 | 30.22 | $ 8,159.40 |
| **Total** | | | **$78,188.65** |

The Court further recommends awarding liquidated damages for plaintiff Quirino as follows:[13]

| Time Period | Weekly Salary | Number of Weeks Late | Liquidated Damages |
|---|---|---|---|
| 5/1/2016-2/28/2020 | $640.00 | 99.86 | **$63,910.40** |

Finally, the Court recommends awarding plaintiff Barranco the following liquidated damages:

| Time Period | Weekly Salary | Number of Weeks Late | Liquidated Damages |
|---|---|---|---|
| 5/1/2016-3/31/2020 | $650.00 | 102.15 | $ 66,397.50 |
| 3/31/2021-2/28/2022 | $370.00 | 23.86 | $ 8,828.20 |
| **Total** | | | **$75,225.70** |

---

[12] Since the first week of pay during each pay period was untimely, the Court calculates the number of weeks late as half the weeks during the applicable time period.

[13] Quirino includes in his calculation of "Liquidated Damages for Failure to Pay Weekly Wage Pursuant to NYLL 191," the period of March 1, 2020 until February 28, 2022, when he was not paid at all by defendants.  *See* Dkt. 24-8 at ECF p. 4.  However, section 191 "guarantees plaintiffs only timely payment of 'wages earned in accordance with the agreed terms of employment.'"  *Myers v. Hertz Corp.*, 624 F.3d 537, 545 & n.1 (2d Cir. 2010) (quoting N.Y. Labor Law § 191).  Quirino does not allege that a weekly salary was part of the "agreed terms" of his employment during this time period.  *See* Quirino Decl. ¶ 10.  Accordingly, Quirino requested, and the Court already recommended, that liquidated damages be awarded for defendants' failure to pay the minimum wage during that period.  Any further liquidated damages award for the same time period would be duplicative.

F.      **Post-Judgment Interest**

Finally, plaintiffs seek an award of post-judgment interest. *See* Pls.' Mem. at 34. "The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)); *see also Indu Craft, Inc. v. Bank of Baroda*, 87 F.3d 614, 619 (2d Cir. 1996) (prevailing party is entitled to post-judgment interest as a matter of right). The post-judgment interest rate is set forth in 28 U.S.C. § 1961(a), which provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Post-judgment interest "shall be computed daily [from the date of judgment] to the date of payment." 28 U.S.C. § 1961(b).

This Court finds that an award of post-judgment interest is mandatory, and respectfully recommends awarding post-judgment interest to be calculated in accordance with 28 U.S.C. § 1961(a) and (b) from the date of the entry of judgment to the date of payment.

### Conclusion

For the reasons set forth above, this Court recommends:

(1) granting plaintiffs' motion for a default judgment against defendants, jointly and severally, and entering judgment against defendants Maredin Rest. Corp. d/b/a T-Bone Diner and Peter Plevritis;

(2) awarding each individual plaintiff damages in the following amounts, which are comprised of unpaid regular wages, minimum wages, overtime wages, spread of hours wages (if applicable), liquidated damages and statutory damages: **$173,251.53** for **Santiago Anzures**,

**$484,324.40** for **Alfredo Sanchez Quirino**, and **$448,202.88** for **Eleazar Mendez Barranco**;

(3) awarding plaintiffs post-judgment interest as described above.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiffs' counsel to serve a copy of this Report and Recommendation, by overnight mail and first-class mail, on defendants and to file proof of service on ECF by **January 29, 2024**.  Any objections to the recommendations made in this Report must be filed with the Honorable Eric Komitee within 14 days after the filing of this Report and Recommendation and, in any event, on or before **February 7, 2024**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

**SO ORDERED**

Dated: Brooklyn, New York
         January 24, 2024

s/ James R. Cho
James R. Cho
United States Magistrate Judge